**IN THE UNITED STATES DISTRICT COURT**
**FOR THE WESTERN DISTRICT OF TENNESSEE**
**EASTERN DIVISION**

| | | |
|---|---|---|
| PARAGON FILMS, INC., Plaintiff, v. BERRY GLOBAL, INC., Defendant. | ) | 1:20-cv-02440-JPM-tmp |

**CLAIM CONSTRUCTION ORDER**

The case is before the Court for claim construction pursuant to Markman v. Westview Instruments, Inc., 52 F.3d 967, 979 (Fed. Cir. 1995), *aff'd*, 517 U.S. 370 (1996). A Markman hearing was held on December 13, 2021. (ECF No. 68.) Present were Raymond Ferrera and Joshua Cumby, counsel for Plaintiff, and Mark Hagedorn, Kyle Forgue, Adam Baldridge, and Nicole Berkowitz, counsel for Defendant. Adam Borgman, Senior Counsel for Berry Global, Inc., was also present. (Id.)

# I. BACKGROUND

## A. Procedural Background

On June 19, 2020, Plaintiff Paragon Films, Inc. ("Paragon") filed a Complaint alleging Defendant Berry Global, Inc. ("Berry") infringed the following patents: U.S. Patent No. 8,100,356 (the "'356 Patent"), U.S. Patent No. 8,221,298 (the "'298 Patent"), U.S. Patent No. 8,475,349 (the "'349 Patent"), and U.S. Patent No. 8,777,829 (the "'829 Patent"). (ECF No. 1 ¶ 19.) Paragon filed an Amended Complaint on August 14, 2020. (ECF No. 26.) The Court denied Berry's

Motion to Dismiss Plaintiff's Amended Complaint (ECF No. 30) on November 24, 2020. (ECF No. 42.) Berry filed its Answer and Counterclaims on December 8, 2020. (ECF No. 44.)

Paragon is an Oklahoma corporation with its principal place of business in Broken Arrow, Oklahoma. (ECF No. 26 ¶ 1.) Berry is a Delaware corporation with a manufacturing facility located in Jackson, Tennessee. (Id. ¶ 2.) Paragon and Berry are competitors in the high-performance stretch film products market. (Id. ¶ 19.) Paragon alleges that Berry's FORTITUDE product infringes one or more claims of each of the patents-in-suit. (Id. ¶ 41.)

**B. The Patents-in-Suit**

The '356 Patent is entitled "Apparatus and Method for Winding Film onto a Film Roll." The '298 Patent is entitled "Apparatus and Method for Folding Film Edges." The '349 and '829 Patents are both entitled "Method for Folding Film Edges."

The '356 Patent primarily discloses "[a]n in-process apparatus for oscillating and winding film onto a film roll" that "comprises the steps of providing a film, a retractable idler roll, and a film roll separated from the retractable idler roll by an air gap that remains constant as the film is wound onto the film roll." ('356 Patent, col. 2 ll. 18–19, 25–28.)

The '298, '349, and '829 Patents all share the same specification. These patents primarily disclose methods and apparatuses "for folding the edges of a film during the production process." ('349 Patent, col. 2 ll. 4–5; '298 Patent, col. 1 ll. 66–67; '829 Patent, col. 1 ll. 65–66.) "Edge folds may increase the ease of use and reduce waste by making the film less susceptible to failure due to tears, rough handling, or excessive stretching." ('349 Patent, col. 2 ll. 64–67; '298 Patent, col. 2 ll. 60–63; '829 Patent, col. 2 ll. 59–62.)

## II. APPLICABLE LEGAL STANDARD

"It is a 'bedrock principle' of patent law that 'the claims of a patent define the invention to which the patentee is entitled the right to exclude.'" Phillips v. AWH Corp., 415 F.3d 1303, 1312 (Fed. Cir. 2005) (quoting Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc., 381 F.3d 1111, 1115 (Fed. Cir. 2004)). Courts, as a matter of law, must construe the claims of a patent in order to ascertain precisely what it is that is patented. See id.; see also Markman v. Westview Instruments, Inc., 517 U.S. 370, 387 (1996).

In engaging in that exercise, the words in the claims are "generally given their ordinary and customary meaning," that is, "the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." Phillips, 415 F.3d at 1312–13 (internal citations and quotation marks omitted). This ordinary and customary meaning "may be readily apparent even to lay judges," and where that is the case, claim construction involves "little more than the application of the widely accepted meaning of commonly understood words." Id. at 1314 (citing Brown v. 3M, 265 F.3d 1349, 1352 (Fed. Cir. 2001)).

However, as the ordinary and customary meaning is often not immediately apparent, courts must look to other sources of evidence—"the words of the claims themselves, the remainder of the specification, the prosecution history, and extrinsic evidence concerning relevant scientific principles, the meaning of technical terms, and the state of the art." Id. (citing Innova, 381 F.3d at 1116). In Phillips, the Federal Circuit provided guidance on the relative weight given to evidence from these various sources. Id.

First, "the claims themselves provide substantial guidance as to the meaning of particular claim terms," particularly the "context in which a term is used in the asserted claim." Id. But because claims are also part of a "fully integrated written instrument," they must "be read in view

of the specification, of which they are a part." Markman, 52 F.3d at 978, 979 (citations omitted). As the Federal Circuit has stressed, "[a] patent's specification provides necessary context for understanding the claims, and 'is always highly relevant to the claim construction analysis.'" Abbott Labs. v. Sandoz, Inc., 566 F.3d 1282, 1288 (Fed. Cir. 2009) (en banc in part) (quoting Phillips, 415 F.3d at 1315). Further, "sometimes the specification offers practically incontrovertible directions about claim meaning," as when inventors "act as their own lexicographers and give a specialized definition of claim terms," or "intentionally disclaim, or disavow, subject matter that would otherwise fall within the scope of the claim." Id. (internal citations and quotation marks omitted). But the Court must take care neither "to import limitations into the claims from the specification," nor to allow "the claims to enlarge what is patented beyond what the inventor has described as the invention." Id. at 1288 (internal citations and quotation marks omitted). In addition, "a particular embodiment appearing in the written description may not be read into a claim when the claim language is broader than the embodiment." Resonate Inc. v. Alteon Websystems, Inc., 338 F.3d 1360, 1364–65 (Fed. Cir. 2003).

The prosecution history of the patent is the other type of "intrinsic evidence," along with the specification, that courts consider when determining the meaning of disputed terms. Phillips, 415 F.3d at 1317.

Finally, courts may consider extrinsic evidence—that is, "all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises." Id. (quoting Markman, 52 F.3d at 980). Such evidence, however, is "less significant than the intrinsic record in determining the legally operative meaning of claim language." Phillips, 415 F.3d at 1317 (internal quotations and citations omitted).

In engaging in a Markman analysis, a court is not required to "repeat or restate every claim term in order to comply with the ruling that claim construction is for the court." U.S. Surgical Corp. v. Ethicon, Inc., 103 F.3d 1554, 1568 (Fed. Cir. 1997). Rather, "[c]laim construction is a matter of resolution of disputed meanings and technical scope, to clarify and when necessary to explain what the patentee covered by the claims, for use in the determination of infringement." Id.

## III. TERMS AT ISSUE

### A. Summary of Parties' Positions

Paragon proposes plain and ordinary meaning for a fair amount of the terms, relying largely on the patents' specifications along with the prosecution histories and some extrinsic evidence such as dictionary definitions. (See generally ECF No. 62.) Paragon argues that Berry's proposed constructions are not consistent with the patents' history nor with what a PHOSITA would understand as the claim limitations. (ECF No. 65 at PageID 2912–13.)

Conversely, Berry contends that Paragon's constructions largely ignore the prosecution histories in order to give the claims a broader construction. (ECF No. 66 at PageID 2940.) Further, Berry asserts that Paragon is improperly adding limitations from the specification into the claims. (Id. at PageID 2942.)

### B. Procedural Background

Paragon and Berry filed Opening Claim Construction Briefs (ECF Nos. 62 and 63, respectively) on October 22, 2021. On November 19, 2021, Paragon and Berry filed Responsive Claim Construction Briefs. (ECF Nos. 65 and 66, respectively.) The Parties jointly filed a claim construction and prehearing statement on December 3, 2021. (ECF No. 67.) A hearing took place on December 13, 2021. (ECF No. 68.)

At the hearing, both Parties provided alternative constructions for some of the terms in dispute. (See generally Hearing Transcript, ECF No. 69.) The Court has adopted or utilized the Parties' suggested constructions where possible.

**C. Agreed-Upon Terms**

None.

**D. Overview of Disputed Claim Terms**

The Parties do not fully agree on which terms require claim construction. Based on review of the briefing, the Court will construe the following terms:

1. "idler roll" and "retractable idler roll"
2. "folding guide"
3. "folding rod"
4. "air gap" and "maintains an air gap"
5. "plurality of folding guides that are positioned" and "positioning a plurality of folding guides"
6. "each folding guide . . . induces two folds" and "inducing two folds with each folding guide"
7. "adjacent"
8. "in-process"
9. "oscillating mechanism"
10. "moves vertically away"
11. "the film is wound onto the roll horizontally"
12. "wherein each folding guide separates adjacent sections of film . . ."

The Court will also briefly address the remaining terms, which can be construed in accordance with the guidance provided for the twelve terms listed above.

**1) "idler roll" and "retractable idler roll"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "idler roll" | An approximately cylindrically shaped material handling component that conveys stretch film | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, |

| | | | |
|---|---|---|---|
| | through a machine process | belt or other external power source | belt or other external power source |
| "retractable idler roll" | An approximately cylindrically shaped material handling component that conveys stretch film through a machine process *that backs away from a film roll as the film on a roll thickens during winding* | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, belt or other external power source *and which is movable relative to the film roll* | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, belt or other external power source *that backs away from a film roll as the film on a roll thickens during winding* |

The term "idler roll" appears in claim 1 of the '298, '349, and '829 Patents. The term "retractable idler roll" appears in claim 1 of the '356 Patent.

The key portion in dispute is whether the idler roll is a cylinder that is rotated solely by the film or could be rotated by other means. Paragon contends that Berry's construction which includes "freely rotating" and "rotated solely by the film" "is inconsistent with the specifications of the patents-in-suit, which state that the film 'moves over' the idler rolls but do not include language limiting their rotation." (ECF No. 62 at PageID 849.) Berry, however, contends that "[a] POSA would understand an 'idler' roll to be different than other types of rolls." (ECF No. 63 at PageID 1140.) Berry also asserts that "Paragon ignores the term 'idler' and attempts, yet again, to improperly introduce 'stretch' with its proposed construction." (Id.)

In support of its construction that an idler roll is not necessarily freely rotating, Paragon cites to the specification: "A mechanical system may be used to control the retractable idler roll." (ECF No. 65 at PageID 2920.) (citing '356 Patent, 3:62–63.) Paragon also cites to its 3 Meter

Stretch Film Line Specification (ECF No. 62-3),[1] which refers to "driven idler rolls." (ECF No. 65 at PageID 2921.)

Berry argues that Paragon is attempting to "re-draft the claims to render 'idler' totally superfluous." (ECF No. 66 at PageID 2945.) Berry asserts that Paragon's cited support is an "internal Paragon document (i.e., not public) . . . dated 2014 (several years after the priority date of the '356 patent), and is purposefully drafted for Paragon." (Id. at PageID 2946.) In support of its construction, Berry cites to multiple extrinsic sources that indicate that a PHOSITA would "distinguish idler rolls from externally driven rolls." (Id.) (citing ECF Nos. 63-24; 63-25; 63-13; 63-27; and 63-18.)

Overall, much of the extrinsic evidence suggests that a PHOSITA at the time of the invention would understand an idler roll to not be driven by a motor or other power source. (See, e.g., ECF No. 63-24 at PageID 2769.) ("Idler Roller – A roller which is driven by the web rather than by an electric motor, belt or other external means.") Further, the intrinsic evidence does not indicate that a different meaning should be used, and further indicates that the word "idler" must have some meaning because in the prosecution history of the '356 Patent, the applicant uses the term "roller" without the word "idler" before it, indicating that an idler roll cannot refer to all types of rolls or rollers. (ECF No. 63-5 at PageID 1337.) ("Both of the citations above and Figure 11 describe a roller in close contact with the core. . . . In contrast, Applicant's retractable idler roll never contacts the film roll.") "A claim construction that gives meaning to all the terms of the claim is preferred over one that does not do so." Merck & Co., Inc. v. Teva Pharms. USA, Inc., 395 F.3d 1364, 1372 (Fed. Cir. 2005). As a result, the Court agrees with Berry's construction that

[1] There is a dispute between the Parties about whether this source was properly disclosed. (See ECF No. 66 at PageID 2938.)

an idler roll is "a freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, belt or other external power source."

As for the retractable idler roll, the specification of the '356 Patent states that "[t]he film 430 may pass over the retractable idler roll 410, which moves away from the film roll." '356 Patent col. 3 ll. 49–50. This definition is further supported by the '356 Patent's prosecution history, which provides the definition as the Applicant understood it: "[T]he retractable idler roll moves away from the film roll in order to maintain a constant distance between the retractable idler roll and the surface of the film roll." (ECF No. 63-5 at PageID 1337.) Additionally, the plain and ordinary meaning of "retractable" would support an object that is able to back away from or into another object. Thus, the intrinsic evidence and the ordinary meaning of "retractable" support Paragon's proposal that the retractable idler roll "backs away from a film roll as the film on a roll thickens during winding."

**2) "folding guide"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "folding guide" | A device or assembly that initiates the folding of a film edge | Indefinite, subject to 35 U.S.C. § 112 ¶ 6; alternatively:<br><br>Structure: Straight cylindrical rod having a uniform diameter of approximately 11/16 inch along its length<br><br>Function: Defined by the clauses of the respective independent claim in which the term appears as construed below | Structure: A rod<br><br>Function: Defined by the clauses of the respective independent claim in which the term appears as construed in this Order |

The claim term "folding guide" appears in claim 1 of the '298, '349, and '829 Patents. The primary dispute in this term is whether it is subject to 35 U.S.C. § 112 ¶ 6. Paragon asserts that because the claim does not have the term "means," it is "afforded a presumption against applying Section 112(f)." (ECF No. 62 at PageID 850.) Instead, Paragon contends that its construction "most naturally aligns with the patents' description of the invention." (Id.) Berry, however, contends that the term "is generic and does not convey to a POSA any particular structure." (ECF No. 63 at PageID 1141.) In support of its proposed structure, Berry asserts that the application and specifications indicate that its proposed structure is necessary to create the edge folds. (Id.)

Paragon, in support of its construction, cites to Figures 2 and 3 in the '298 Patent and its specification (2:29–30): "with the folding guide assembly comprised of folding rods." (ECF No. 65 at PageID 2925.) Paragon also cites to the following sentence in the specification of the '298, '349, and '829 Patents: "The folding guide assemblies 235 may be comprised of a plurality of folding rods 240-245, which may be placed in the slits 270 between sections of film 210 to separate the sections of film 210." (Id.) Paragon asserts that Berry's proposed structure does not have support in the specifications: "they make no mention of 'straight cylindrical rods' of any diameter, much less of 'uniform diameter.'" (Id. at PageID 2925–26.)

Berry, in support of its contention that § 112 applies, asserts that "'guide' is a nonce term that does not convey any defined structure to a POSA, and the remainder of the asserted claims solely describe the function thereof rather than any structure for accomplishing the function." (ECF No. 66 at PageID 2951.) Berry also states that "Paragon's opening brief also classifies 'guide' as a verb (i.e., function) rather than as a noun (suggesting structure)" and that "Paragon's proposed construction also confirms that treatment under §112(¶6) is required because the generically recited 'device or assembly' is only defined in terms of its proposed function: initiates

the folding of a film edge." (Id. at PageID 2952.) As for Berry's proposed structure, Berry contends that "[t]he only disclosed structure that 'produces two edge folds' (like that of the claimed 'folding guide') is a 'rod' (e.g., items 240-45)." (Id.) It also contends that "Paragon also admits that 'folding guide' should be construed as 'folding rod' in its opening brief." (Id.) Further, Berry contends that the additional terms that "Paragon seeks to introduce now with its proposed construction ('assembly' and 'initiate') were deleted during prosecution." (Id.)

Pre-AIA, title 35, section 112, paragraph 6 of the United States Code provides that:

> An element in a claim for a combination may be expressed as a means or step for performing a specified function without the recital of structure, material, or acts in support thereof, and such claim shall be construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof.

35 U.S.C. § 112 ¶ 6. "Through use of means-plus-function limitations, patent applicants are allowed to claim an element of a combination functionally, without reciting structures for performing those functions." Apex Inc. v. Raritan Computer, Inc., 325 F.3d 1364, 1371 (Fed. Cir. 2003) (citing Envirco Corp. v. Clestra Cleanroom, Inc., 209 F.3d 1360, 1364 (Fed. Cir. 2000)). This provision strikes the following balance:

> allowing patentees to express a claim limitation by reciting a function to be performed rather than by reciting structure for performing that function, while placing specific constraints on how such a limitation is to be construed, namely, by restricting the scope of coverage to only the structure, materials, or acts described in the specification as corresponding to the claimed function and equivalents thereof.

Williamson v. Citrix Online, LLC, 792 F.3d 1339, 1347 (Fed. Cir. 2015). "When a claim term lacks the word 'means,' the presumption can be overcome and § 112, para. 6 will apply if the challenger demonstrates that the claim term fails to 'recite sufficiently definite structure' or else recites 'function without reciting sufficient structure for performing that function.'" Id. at 1349 (quoting Watts v. XL Sys., Inc., 232 F.3d 877, 880 (Fed. Cir. 2000)).

Here, the Court finds that 112 U.S.C. § 112 ¶ 6 applies because the claim term "folding guide" as well as Paragon's proposed construction of "a device or assembly that initiates the folding of a film edge" show that the term is "reciting a function to be performed rather than [] reciting structure for performing that function." See Williamson, 792 F.3d at 1347. As a result, the Court must look to the specification to find the corresponding structure. The specification provides the following structure for the "folding guides":

> The folding guide assemblies 235 may be comprised of a plurality of folding rods 240-245, which may be placed in the slits 270 between sections of film 210 to separate the sections of film 210. . . .
> The folding rods 240-245 may vary from 3/8 inch to 1 inch in diameter, with a preferred diameter of approximately 11/16 inch. The folding rods 240-245 may have uniform diameter throughout their length. As an alternative, the portions of the folding rods 240-245 that contact the film 210 may have a smaller diameter or narrow to a point to further aid in separating the sections of film.

'298 Patent col. 3 ll. 40–43, 48–54. No other structures for folding guides are disclosed in the specification shared by the '298, '349, and '829 Patents. As a result, the Court finds the structure to be a rod. The Court does not adopt Berry's other structural suggestions because, as quoted above, the specification discloses a range of diameters rather than only 11/16-inch diameters and also discloses rods where the diameter is not a constant length, and it does not specifically say the rods must be "cylindrical."

**3) "folding rod"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "folding rod" | A rod that guides stretch film during the folding process | A straight cylindrical rod having a uniform diameter of approximately 11/16 inch along its length | A rod |

The term "folding rod" appears in dependent claims 2–4 of the '298, '349, and '829 Patents. The Parties primarily disagree on whether there is a diameter limitation in this claim term. (See ECF No. 62 at PageID 851–52; ECF No. 63 at PageID 1149–50.) As discussed above, the specification for these patents discloses a range of diameters as well as embodiments with a uniform diameter and embodiments that do not have a uniform diameter. As a result, the Court will not impose Berry's proposed limitation in this term.

**4) "air gap" and "maintains an air gap"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "air gap" | A space or separation between the retractable idler roll and a wound roll of stretch film | Indefinite; alternatively:<br><br>Constant non-zero distance | A constant non-zero distance between the retractable idler roll and the film roll |
| "maintains an air gap" | No construction needed for entire phrase / plain and ordinary meaning for "maintains" | Indefinite; alternatively:<br><br>Does not contact the film roll and keeps a constant non-zero distance | Does not contact the film roll and keeps a constant non-zero distance |

This term is in claim 1 of the '356 Patent. Paragon contends that this term does not need construction but does propose construction for "air gap." (ECF No. 62 at PageID 852, 865–66.) Paragon's proposed construction for "air gap" is "a space or separation between the retractable idler roll and a wound roll of stretch film." (ECF No. 62 at PageID 852.) In support of this construction, Paragon cites to the specification:

> The separation rate may maintain a constant distance between the retractable idler roll 410 and the surface of the film roll 420, described as an air gap 440. The air gap 440 may be consistently maintained throughout the winding process in order to trap air between the layers of film 430 as they are wound onto the film roll 420. The air gap 440 may be relatively short in order to maintain the appropriate level

> of air entrapment and to ensure proper oscillation of the film 430. For example, the air gap 440 may range from 0 to 5 inches, with a preferred distance of approximately one inch.

(Id.) (citing '356 Patent, col. 3, ll. 51–61.) For "maintains," Paragon contends that no construction is needed because the plain and ordinary meaning is clear. (Id. at PageID 866.)

Berry contends that Paragon "disclaimed any claim scope purporting to cover an 'air gap' value of zero" because "the term was added to distinguish from the prior art showing a 'roller in close contact with the core. As a result, the alleged air gap does not exist.'" (ECF No. 63 at PageID 1137.) (citing ECF No. 63-5 at PageID 1248, 1332, 1335–37.) Berry contends that its "proposed construction is consistent with the plain and ordinary meaning, the above-referenced amendment and disclaimer, and with the specification and figures of the '356 patent." (Id.) Berry argues that Paragon's proposed construction . . . would cover the Salzsauler prior art Paragon specifically distinguished." (Id. at PageID 1138.) Berry contends that "[a]ny air 'entrapped' between layers of film on a film roll is described separately from the spatial 'air gap' between rolls." (Id.) (citing '356 Patent, col. 3 ll. 54–56.) In its Response Brief, Berry asserts that "the parties appear to at least agree that claim 1 of the '356 patent requires 'separation,'" and that "Paragon's cited support used the term 'distance' like in Berry's proper construction." (ECF No. 66 at PageID 2943–44.)

At the hearing, the Parties both indicated that a meaning of "constant non-zero distance" would be acceptable for purposes of the claim terms "air gap" and "maintains an air gap." (Hearing Transcript, ECF No. 69 at PageID 3118–19.) Further, this meaning is supported by the specification and prosecution history, as discussed above. As a result, the Court adopts this meaning for the disputed term.

**5) "Plurality of folding guides that are positioned" / "positioning a plurality of folding guides"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "plurality of folding guides that are positioned between the first idler roll and the second idler roll" / "positioning a plurality of folding guides between the first idler roll and the second idler roll" | Two or more devices or assemblies that initiate the folding of a film edge and are arranged between a first approximately cylindrically shaped material handling component that conveys stretch film through a machine process and a second approximately cylindrically shaped material handling component that conveys stretch film through a machine process" / "arranging two or more devices or assemblies that initiate the folding of a film edge between a first approximately cylindrically shaped material handling component that conveys stretch film through a machine process and a second approximately cylindrically shaped material handling component that conveys stretch film through a machine process | Indefinite, subject to 35 U.S.C. § 112 ¶ 6; alternatively:<br><br>Structure: plurality of straight cylindrical rods having a uniform diameter of approximately 11/16 inch along their lengths that are positioned between the first idler roll and the second idler roll at a guide distance approximately 2/3 of the first distance from the first idler roll and at a guide angle of approximately 45° / positioning a plurality of straight cylindrical rods having a uniform diameter of approximately 11/16 inch along their lengths between the first idler roll and the second idler roll at a guide distance approximately 2/3 distance from the first idler roll and at a guide angle of approximately 45°<br><br>Function: Defined by the wherein clause of the respective independent claim as construed herein. | Plurality of rods that are positioned between the first idler roll and the second idler roll / positioning a plurality of rods between the first idler roll and the second idler roll |

This disputed claim term appears in claim 1 of the '298, '349, and '829 Patents. The Parties disagree as to whether section 112 ¶ 6 applies. The next main dispute is whether the construction should take on Berry's proposed specific distances and angles.

Paragon contends that because the claim term lacks the word "means," the presumption against applying § 112 ¶ 6 applies. (ECF No. 62 at PageID 854.) Berry contends, however, that this term is indefinite for the same reason that "folding guide" is indefinite. (ECF No. 63 at PageID 1144.)

In support of its contention for the specific positioning and angles, Berry cites to the provisional application and specification at col. 3 ll. 36–39, 55–57, where "[t]he 'placement' (i.e., position and angle relative to the idler rolls) of the folding guides (i.e., folding rods) is described as a 'critical' and 'key' factor in achieving and maintaining edge folds." (ECF No. 63 at PageID 1144.) Berry cites to the preferred embodiment in the specification and the prosecution history (ECF No. 63-6 at PageID 1540–42) for the specific values it proposes. (ECF No. 63 at PageID 1144.)

In its response brief, Paragon contends that Berry's construction "incorrectly includes a limitation of 'a guide distance approximately 2/3 of the first distance from the first idler roll and at a guide angle of approximately 45°.'" (ECF No. 65 at PageID 2927–28.) Berry asserts in its response brief that "Paragon again ignores language from the specification and prosecution history in pursuing its construction of this disputed term." (ECF No. 66 at PageID 2958.) Berry points to the prosecution history where Paragon used Berry's proposed limitations to overcome the prior art for the '298 Patent. (ECF No. 63-6 at PageID 1540–42.)

As discussed above, the term "folding guides" is subject to 35 U.S.C. § 112 ¶ 6. The Court applies its construction of that term here. The positioning of those folding guides, however, is not

means-plus-function claiming, so the Court need not look to the specification for further corresponding structure. What must be determined instead is whether the specific guide distances and angles proposed by Berry are part of the claim limitations because other configurations were disclaimed in the prosecution history. The prosecution provides the following on how the position of these folding guides is different from the prior art:

> Also unlike Ranger's folding members, Applicant's folding guides are set at a very specific oblique angle:
> The guide angle 290 between the film 210 and the folding rods 240-245, measured with the folding rods 240-245 leaning toward the first idler roll 220, may vary from 20° to 90°, with a preferred angle of approximately 45° [paragraph 0025].

(ECF No. 63-6 at PageID 1540–42.) (brackets in original.) The Applicant did not solely rely on an angle of 45° to distinguish from the prior art, and thus it would be inappropriate to introduce such a limitation here. Similarly, there is no disclosure that the folding guide must be approximately 2/3 distance from the first idler roll. As a result, the Court adopts the construction "plurality of rods that are positioned between the first idler roll and the second idler roll" and "positioning a plurality of rods between the first idler roll and the second idler roll" for this term.

**6) "each folding guide . . . induces two folds" and "inducing two folds with each folding guide"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "each folding guide . . . induces two folds" / "inducing two folds with each folding guide" | Each device or assembly that initiates the folding of a film edge . . . initiates formation of horizontal folds / Causing the formation of two folds with each device or assembly that initiates the folding of a film edge" | Indefinite, subject to 35 U.S.C. § 112 ¶ 6; alternatively: Each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent | Each rod that initiates the folding of a film edge . . . initiates formation of two horizontal folds / Causing the formation of two folds with each rod that initiates the folding of a film edge |

| | | | |
|---|---|---|---|
| | | sections of film thereby introducing two folds (one in each of the two adjacent sections of film) | |

This term is in claim 1 of the ’298, ’349, and ’829 Patents. The primary dispute is whether this is a means-plus-function term. Paragon holds that, because the term does not contain the word “means,” § 112 ¶ 6 should not apply. (ECF No. 62 at PageID 856–57.) Berry holds that Paragon’s proposed construction is invalid for lack of written description and enablement. (ECF No. 63 at PageID 1148.)

In support of its construction, Paragon cites to the patent specification and a dictionary definition of “induce.” (ECF No. 62 at PageID 856.) Overall, Paragon proposes that the terms be given their plain and ordinary meaning. (ECF No. 65 at PageID 2929.) Berry, on the other hand, argues that the prosecution history requires that this term describes “a single rod touching two adjacent film edges created by a single slit,” and that Paragon’s proposed construction “appears to be an attempt to unreasonably enlarge the scope of the asserted claims.” (ECF No. 63 at PageID 1148.) (citing ECF No. 63-6 at PageID 1482–83; 1505–06; 1540–42.) Berry also contends that “[t]here does appear to be agreement that after folds are started by the folding guides (i.e., rods) there is no further structure contacting/interacting with the film edges, thus the folds complete solely due to the cling of the film material (e.g., without any external contact (intervention)).” (ECF No. 66 at PageID 2956.)

The Court finds that plain and ordinary meaning of inducing two folds is sufficient after applying the Court’s prior construction for folding guides. Thus, the Court’s construction largely adopts Paragon’s proposal for “inducing” while including structure for the term “folding guide,” and construes this term to mean “each rod that initiates the folding of a film edge . . . initiates

formation of two horizontal folds" or "causing the formation of two folds with each rod that initiates the folding of a film edge."

**7) "adjacent"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "adjacent" | Not distant; nearby | No construction needed; alternatively: Adjoining, abutting, or bordering | Next to |

This term appears in claim 1 of the '298, '349, '829 Patents. Paragon cites to a dictionary definition in support of its proposed meaning. (ECF No. 62 at PageID 857.) Paragon disagrees with Berry's proposed synonyms because "the inventor used the word 'adjacent,' not 'adjoining,' and the Court 'must consider the word that the inventor actually chose and use the definitions of that term that are consistent with the written description.'" (Id. at PageID 858.) (citing Int'l Rectifier Corp. v. IXYS Corp., 361 F.3d 1363, 1374 (Fed. Cir. 2004).)

Berry, however, contends that the prosecution history and specification support its construction: "[T]he specifications certainly do not describe any embodiment where adjacent sections of film do not share a common longitudinal slit creating adjacent edges of the adjacent sections of film." (ECF No. 66 at PageID 2949.) Berry further asserts that "Paragon's proposal also raises indefiniteness issues because the public cannot determine what amount of distance is 'nearby' for purposes of avoiding infringement of the asserted claims." (Id. at PageID 2950.)

At the hearing, the Court indicated that "next to" would be the most understandable construction beyond plain and ordinary meaning. (Hearing Transcript, ECF No. 69 at PageID 3141.) Paragon agreed that "not distant" did not help clarify the term. (Id. at PageID 3142.) The Court construes the term "adjacent" as "next to" in order to clarify its plain and ordinary meaning.

**8) "in-process"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "in-process" | In-line, or in a single continuous process | The preamble is non-limiting; alternatively: In a film processing operation | The preamble is non-limiting |

This term is in the preamble of claim 1 of all the patents-in-suit. Paragon cites to language in the abstract and specification that state that the method or apparatus is "in-process." (ECF No. 62 at PageID 860.) Paragon asserts that "[h]ere, the preambles are both necessary to give meaning to claim 1 of each patent-in-suit and recite additional structure underscored as important by the patents' specifications" and that "the claimed in-process methods and apparatuses are an improvement on those disclosed in the prior art." (Id. at PageID 861.) Similarly, Paragon contends that Berry's alternative proposed construction "would undermine the value of these important improvements and sap the patents of their vitality." (Id. at PageID 862.) Paragon also points to portions of the prosecution history where "production of a film roll in-process was also relied on during prosecution to distinguish prior art." (ECF No. 65 at PageID 2917.) (citing ECF No. 62-2 at PageID 948; ECF No. 62-5 at PageID 1091; ECF No. 62-6 at PageID 1101; and ECF No. 62-7 at PageID 1111.) Paragon asserts that "[b]ecause the preambles distinguish the inventions claimed in the patents-in-suit from the prior art, they are 'transformed' into a claim limitation." (Id. at PageID 2918.)

Berry, however, asserts that "[p]reambles are generally non-limiting," and "[h]ere, the preambles (1) provide no antecedent basis for any later claim term, (2) are not limited by the specification, and (3) were not relied upon during prosecution to distinguish prior art." (ECF No. 63 at PageID 1129.) Berry also states that "[t]he non-limiting nature was admitted by Paragon

during prosecution of the '829 patent." (Id. at PageID 1130.) (citing ECF No. 63-9 at PageID 2020–26.) Berry asserts that its alternative construction "is appropriate because it does not introduce further uncertainty. The Asserted Patents state film processing operations (e.g., 'the steps 100 for producing [cast] film in-process') of which 'steps may be performed ***in a different order***, and ***one or more steps may be eliminated without departing from the scope of the present disclosure***.'" (Id. at PageID 1131.) (emphasis and formatting in original.) (citing '298 Patent, col. 3 ll. 6–9 and '356 Patent, col. 3 ll. 14–16.) Berry contends that "the claims remain complete even without this term, showing that it provides no limitation." (ECF No. 66 at PageID 2960.)

"Generally, the preamble does not limit the claims." Allen Eng'g Corp. v. Bartell Indus., Inc., 299 F.3d 1336, 1346 (Fed. Cir. 2002). The Federal Circuit has provided the following principles to aid in determining whether the preamble is limiting:

> [T]he preamble may be construed as limiting "if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim." Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc., 289 F.3d 801, 808 (Fed. Cir. 2002), quoting Pitney Bowes, Inc. v. Hewlett–Packard Co., 182 F.3d 1298, 1305 (Fed. Cir. 1999). A preamble is not regarded as limiting, however, "when the claim body describes a structurally complete invention such that deletion of the preamble phrase does not affect the structure or steps of the claimed invention." Catalina, 289 F.3d at 809. If the preamble "is reasonably susceptible to being construed to be merely duplicative of the limitations in the body of the claim (and was not clearly added to overcome a [prior art] rejection), we do not construe it to be a separate limitation." Symantec Corp. v. Computer Assocs. Int'l, Inc., 522 F.3d 1279, 1288–89 (Fed. Cir. 2008). We have held that the preamble has no separate limiting effect if, for example, "the preamble merely gives a descriptive name to the set of limitations in the body of the claim that completely set forth the invention." IMS Tech., Inc. v. Haas Automation, Inc., 206 F.3d 1422, 1434–35 (Fed. Cir. 2000).

Am. Med. Sys., Inc. v. Biolitec, Inc., 618 F.3d 1354, 1358–59 (Fed. Cir. 2010).

While each of the patent applications mentions the need "for methods, systems, and devices which can efficiently fold the edges of the film in-process" (see ECF No. 62-2 at PageID 948; ECF No. 62-5 at PageID 1091; ECF No. 62-6 at PageID 1101; and ECF No. 62-7 at PageID 1111), Paragon does not provide any support that the "in-process" language in the preamble was

necessary to overcome prior art, as the cited prosecution history support was provided in the initial application rather than to overcome an Examiner's rejection. (See ECF No. 62 at PageID 860–62; ECF No. 65 at PageID 2915–18.) Further, it is unclear how the claims would be incomplete without such a limitation, and "in-process" appears to "merely give[] a descriptive name to the set of limitations in the body of the claim." See IMS Tech., 206 F.3d at 1434. As a result, the Court finds that the preamble for claim 1 in each of the patents-in-suit is nonlimiting.

**9) "oscillating mechanism"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "oscillating mechanism" | A mechanism that oscillates stretch film after folded edges have been induced | Indefinite, subject to 35 U.S.C. § 112, ¶ 6. This limitation renders claim 1 indefinite as no corresponding structure is disclosed in the description of the alleged invention in the '356 Patent. | Structure: A frame<br><br>Function: Moves back and forth between two points |

This term is in claim 1 of the '356 Patent. The parties dispute whether this is a means-plus-function claim.

Paragon asserts that, because the term lacks the word "means," the presumption against § 112 ¶ 6 applies. (ECF No. 65 at PageID 2919.) Paragon uses the following from the specification in support of its construction: "The present disclosure may use any conventional oscillating mechanism to oscillate the film. For example, the oscillating mechanism may be a frame that moves back and forth across a set distance in a controlled manner at a specified rate." '356 Patent, col. 3 ll. 18–24.

Berry, on the other hand, contends that "claim 1 merely describes the 'oscillating mechanism' in terms of the function: oscillates the film for an oscillation rate at an oscillation distance." (ECF No. 63 at PageID 1132.) Berry also asserts that the statement "'may use any conventional oscillating mechanism to oscillate the film' . . . is insufficient under § 112, ¶6" to provide structure. (Id.) Berry further contends that "Paragon's construction also improperly attempts to read in limitations from the specification by adding 'stretch' despite claim 1 simply reciting 'film' without any limitation on the type of film." (Id. at PageID 1133.)

Much like with "folding guides," 112 U.S.C. § 112 ¶ 6 applies here because the claim term "oscillating mechanism" as well as Paragon's proposed construction of "a mechanism that oscillates stretch film" show that the term is "reciting a function to be performed rather than [] reciting structure for performing that function." See Williamson, 792 F.3d at 1347. As a result, the Court must look to the specification to find the corresponding structure. The specification provides the following embodiments for the oscillating mechanism:

> The present disclosure may use any conventional oscillating mechanism to oscillate the film. For example, the oscillating mechanism may be a frame that moves back and forth across a set distance in a controlled manner at a specified rate. The film may be supported by and move with the oscillating frame.

'356 Patent, col. 3 ll. 19–25. The phrase "any conventional oscillating mechanism" fails to provide sufficient structure. However, the structure of "a frame that moves back and forth across a set distance in a controlled manner at a specified rate" connotes a specific structure, and the Court will construe the term likewise. The Court does not find the means-plus-function term to be indefinite.

**10) "moves vertically away"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
| --- | --- | --- | --- |

| “moves vertically away” | Free to move vertically away from a film roll as the film on a roll thickens during winding | Lacks enablement and/or written description; alternatively: Moves along a linear vertical path away | Plain and ordinary meaning |
|---|---|---|---|

This term is in claim 1 of the ’356 Patent. In support of its proposed construction, Paragon cites to the following from the specification: “The film 430 may pass over the retractable idler roll 410, which moves away from the film roll 420 at a separation rate as the film roll increases in size.” (ECF No. 62 at PageID 864.) (citing ’356 Patent, col. 3 ll. 49–51.)

In support of its contention that the term lacks enablement or written description, Berry states that “[c]laims with substantially similar language were rejected in a related Canadian Patent Application No. 2,669,502 despite Paragon’s attempt to justify the claim limitations,” and “Paragon conceded this fact and cancelled the claims containing this language.” (ECF No. 63 at PageID 1135.) In support of its alternative construction, Berry cites to the prosecution history where the “vertically” term was added to overcome the prior art. (Id. at PageID 1136.) (citing ECF No. 63-5 at PageID 1341–48.) Berry takes issue with Paragon’s proposed construction because it “simply adds surplus language around the term being construed, all of which is inconsistent with the specification and injects further ambiguity into the claim.” (Id.)

In its Response Brief, Paragon asserts that “[n]otwithstanding the Canadian Intellectual Property Office’s examination, the United States Patent and Trademark Office allowed claim 1 of the ’356 Patent and it is presumed to be valid.” (ECF No. 65 at PageID 2921.)

Berry’s proffered evidence that the Canadian Intellectual Property Office rejected an identical claim is irrelevant to whether the claim is enabled under U.S. patent law. As a result, the Court does not find this claim invalid for lack of enablement or written description. At the hearing, Paragon indicated that using “moves” instead of “free to move” would be acceptable, and Berry

largely agreed that the plain and ordinary meaning was within the bounds of its alternative proposed construction. (Hearing Transcript, ECF No. 69 at PageID 3148.) The Court construes this term to have its plain and ordinary meaning because the phrase "moves vertically away" is understandable without further construction, and the prosecution history does not indicate that it should have any different meaning.

**11) "the film is wound onto the film roll horizontally"**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "the film is wound onto the film roll horizontally" | No construction needed / plain and ordinary meaning | Lacks enablement and/or written description; alternatively: The film approaches the film roll along a horizontal plane as it is wound onto the film roll | Plain and ordinary meaning |

This term is in claim 1 of the '356 Patent. Paragon contends that "[b]ecause the term 'the film is wound onto the film roll horizontally' is not a term of art and is used in its ordinary manner in claim 1 and the specification of the '356 Patent, it does not require construction." (ECF No. 62 at PageID 864–65.)

Berry asserts that the term lacks enablement or written description because "claims with substantially similar language were rejected in the related Canadian application, and Paragon could not overcome the rejection and cancelled the claims there." (ECF No. 63 at PageID 1139.) Berry contends that this assertion is further supported by the fact that "the terms 'horizontal' and 'horizontally' do not appear in the '356 patent specification," and that "Fig. 4 fails to provide clear orientation of the components relative to any direction." (Id.)

As discussed above, whether or not a claim was allowed in the Canadian application is irrelevant to the inquiry of patentability under U.S. laws. Further, the claim is self-explanatory and not a term of art, so plain and ordinary meaning will be used.

**12) "wherein each folding guide separates adjacent sections of film . . ."**

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| "wherein each folding guide separates adjacent sections of film and induces two folds by causing an edge of each section of film to turn under 180° and spontaneously cling to a bottom surface of the film as the film travels from the folding guides to the second idler roll" | No construction needed for entire phrase; alternatively: The folding guides each induce two horizontal folds on nearby film edges, and after a horizontal fold has been induced, the film then completes the folding action and clings to a surface of the film as the film travels from the folding guides to the second idler roll | Indefinite; alternatively: Wherein each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent sections of film thereby introducing two folds (one in each of the two adjacent sections of film) by forcing the two adjacent edges to turn under 180° from their orientation at the first idler roll and cling to a bottom surface of the film, without further contact or assistance, as the film travels from the rods to the second idler roll thereby separating the two adjacent sections of film | Plain and ordinary meaning |

This term is in claim 1 of the '298 Patent. Paragon contends that no construction is needed and does not offer further analysis in support. (See ECF No. 62 at PageID 867; ECF No. 65 at PageID 2929.) Berry argues that its proposed construction is consistent with the prosecution history, which distinguished the patent from prior art because the folding guides induce the edges to form, and the "edge folds form and set spontaneously." (ECF No. 63 at PageID 1148.) (citing ECF No. 63-6 at PageID 1482–83, 1505–06, 1540–42.) Berry argues that Paragon's alternative construction is invalid for lack of enablement because "the 'nearby' edges being folded by one of the 'folding guides' would not be required to share a common longitudinal slit or be touched by the same folding rod. No such arrangement is disclosed or enabled by the Asserted Patents." (Id.)

The Court finds that the plain and ordinary meaning of the phrase properly includes the limitation that the edge folds form spontaneously. Comparatively, Paragon's alternative proposed construction broadens the claims beyond the actual claim language, and Berry's proposed construction adds unnecessary complications. Thus, the plain and ordinary meaning of the term will be adopted.

## IV. Summary of Construction

| Disputed Term | Paragon's Proposed Construction | Berry's Proposed Construction | Court's Construction |
|---|---|---|---|
| **"idler roll"** | An approximately cylindrically shaped material handling component that conveys stretch film through a machine process | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, belt or other external power source | A freely rotating cylinder that is rotated solely by the film via film-to-roller traction rather than by a motor, belt or other external power source |
| **"retractable idler roll"** | An approximately cylindrically shaped material handling | A freely rotating cylinder that is rotated solely by the film via | A freely rotating cylinder that is rotated solely by the |

| | | | |
|---|---|---|---|
| | component that conveys stretch film through a machine process that backs away from a film roll as the film on a roll thickens during winding | film-to-roller traction rather than by a motor, belt or other external power source and which is movable | film via film-to-roller traction rather than by a motor, belt or other external power source that backs away from a film roll as the film on the roll thickens during winding |
| **"folding guide"** | A device or assembly that initiates the folding of a film edge | Subject to 35 U.S.C. § 112, ¶ 6<br><br>Structure: Straight cylindrical rod having a uniform diameter of approximately 11/16 inch along its length<br><br>Function: Defined by the clauses of the respective independent claim in which the term appears as construed herein | Structure: A rod<br><br>Function: Defined by the clauses of the respective independent claim in which the term appears as construed in this Order |
| **"folding rod"** | A rod that guides stretch film during the folding process | Straight cylindrical rod having a uniform diameter of approximately 11/16 inch along its length | A rod |
| **"air gap"** | A space or separation between the retractable idler roll and a wound roll of stretch film | Indefinite; alternatively: Constant non-zero distance | A constant non-zero distance between the retractable idler roll and the film roll |
| **"maintains an air gap"** | No construction needed for entire phrase / plain and ordinary meaning for "maintains" | Indefinite; alternatively: Does not contact the film roll and keeps a constant non-zero distance | Does not contact the film roll and keeps a constant non-zero distance |

| | | | |
|---|---|---|---|
| **"plurality of folding guides that are positioned" / "positioning a plurality of folding guides"** | Two or more devices or assemblies that initiate the folding of a film edge and are arranged between a first approximately cylindrically shaped material handling component that conveys stretch film through a machine process and a second approximately cylindrically shaped material handling component that conveys stretch film through a machine process / Arranging two or more devices or assemblies that initiate the folding of a film edge between a first approximately cylindrically shaped material handling component that conveys stretch film through a machine process and a second approximately cylindrically shaped material handling component that conveys stretch film through a machine process | Indefinite, subject to 35 U.S.C. § 112, ¶ 6; alternatively:<br><br>Structure: Plurality of straight cylindrical rods having a uniform diameter of approximately 11/16 inch along their lengths that are positioned between and in the same plane as the first idler roll and the second idler roll at a guide distance approximately 2/3 of the first distance from the first idler roll and at a guide angle approximately 45° toward the first idler roll / Positioning a plurality of straight cylindrical rods having a uniform diameter of approximately 11/16 inch along their lengths between and in the same plane as the first idler roll and the second idler roll at a guide distance approximately 2/3 of the first distance from the first idler roll and at a guide angle of approximately 45° toward the first idler roll<br><br>Function: Defined by the wherein clause of | Plurality of rods that are positioned between the first idler roll and the second idler roll / positioning a plurality of rods between the first idler roll and the second idler roll |

| | | | |
|---|---|---|---|
| | | the respective independent claim as construed herein | |
| **"positioning a plurality of folding rods"** | Arranging two or more rods that guide stretch film during the folding process with respect to two or more devices or assemblies that initiate the folding of a film edge | Positioning a plurality of straight cylindrical rods having a uniform diameter of approximately 11/16 inch along their lengths | Positioning a plurality of rods |
| **"each folding guide . . . induces two folds" / "inducing two folds with each folding guide"** | Each device or assembly that initiates the folding of a film edge . . . initiates formation of horizontal folds / Causing the formation of two folds with each device or assembly that initiates the folding of a film edge | Indefinite, subject to 35 U.S.C. § 112 ¶ 6; alternatively: Each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent sections of film thereby introducing two folds (one in each of the two adjacent sections of film) / Each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent sections of film thereby introducing two folds (one in each | Each rod that initiates the folding of a film edge . . . initiates formation of two horizontal folds"/ Causing the formation of two folds with each rod that initiates the folding of a film edge |

| | | | |
|---|---|---|---|
| | | of the two adjacent sections of film) | |
| **“adjacent”** | Not distant; nearby | No construction needed; alternatively: Adjoining, abutting, or bordering | Next to |
| **“adjacent sections of film”** | Not distant or nearby sections of film | No construction needed; alternatively: Sections of film sharing a common longitudinal slit creating adjacent edges of the sections of film | Sections of film next to each other |
| **“in-process”** | In-line, or in a single continuous process | The preamble is non-limiting; alternatively: In a film processing operation | The preamble is non-limiting |
| **“oscillating mechanism”** | A mechanism that oscillates stretch film after folded edges have been induced | Subject to 35 U.S.C. § 112, ¶ 6<br>This limitation renders claim 1 indefinite as no corresponding structure is disclosed in the description of the alleged invention in the ’356 Patent | Structure: A frame<br><br>Function: Moves back and forth between two points |
| **“moves vertically away”** | Free to move vertically away from a film roll as the film on a roll thickens during winding | Lacks enablement and/or written description support; alternatively: Moves along a linear vertical path away | Plain and ordinary meaning |
| **“the film is wound onto the roll horizontally”** | No construction needed / plain and ordinary meaning | Lacks enablement and/or written description support; alternatively: The film approaches the film roll along a horizontal plane as it is wound onto the film roll | Plain and ordinary meaning |

| | | | |
|---|---|---|---|
| **"wherein each folding guide separates adjacent sections of film . . ."** | No construction needed for entire phrase; alternatively: The folding guides each induce two horizontal folds on nearby film edges, and after a horizontal fold has been induced, the film then completes the folding action and clings to a surface of the film as the film travels from the folding guides to the second idler roll | Indefinite; alternatively: Wherein each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent sections of film thereby introducing two folds (one in each of the two adjacent sections of film) by forcing the two adjacent edges to turn under 180° from their orientation at the first idler roll and cling to a bottom surface of the film, without further contact or assistance, as the film travels from the rods to the second idler roll thereby separating the two adjacent sections of film | Plain and ordinary meaning |
| **"separating adjacent sections of film and inducing two folds . . ."** | No construction needed for entire phrase; alternatively: The folding rods separate adjacent sections of film and induce a horizontal fold on the edges of each of adjacent sections, and after a fold has been induced, the film then completes the folding | Wherein each rod is inserted into a separate longitudinal slit that creates two adjacent edges of two adjacent sections of film and individually contacts the two adjacent edges of the two adjacent sections of film thereby introducing two folds (one in each of the two adjacent | Plain and ordinary meaning |

| | | | |
|---|---|---|---|
| | action and clings to a surface of the film | sections of film) by forcing the two adjacent edges to turn under 180° from their orientation at the first idler roll and cling to a bottom surface of the respective section of film, without further contact or assistance, as the sections of film move past the rods thereby separating the two adjacent sections of film | |

IT IS SO ORDERED, this 19th day of April, 2022.

/s/ Jon P. McCalla
JON P. McCALLA
UNITED STATES DISTRICT JUDGE